Kevin K. Kessner, WSB #6-4257
Yonkee & Toner, LLP
319 West Dow Street
P.O. Box 6288
Sheridan, WY 82801
(307) 674-7451
kkessner@yonkeetoner.com

James L. Kauffman
Bailey & Glasser LLP
1055 Thomas Jefferson Street NW, Ste. 540
Washington DC 20007
(202) 463-2101
jkauffman@baileyglasser.com
*(To be admitted Pro Hac Vice)*

Denali S. Hedrick
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
dhedrick@baileyglasser.com
*(To be admitted Pro Hac Vice)*

Kristen M. Gelinas Simplicio
Tycko & Zavareei LLP
2000 Pennsylvania Avenue NW, Ste 1010
Washington DC 20006
(202) 417-3658
ksimplicio@tzlegal.com
*(To be admitted Pro Hac Vice)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

**GARY VENTLING, in his own right and as
representative of a class of persons
similarly situated,**

      **Plaintiff,**

**v.**

                                  **CIVIL ACTION NO. 24-CV-000158**

**ROUNDPOINT MORTGAGE SERVICING LLC,**

        **Defendant.**

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.      Defendant Roundpoint Mortgage Servicing LLC ("Roundpoint") is a mortgage loan servicer that unfairly, unreasonably, and unlawfully services loans of consumers by systematically failing to credit payments when actually received. Instead, Roundpoint holds a payment received in the 15-day grace-period until after expiration of the grace-period, so that Roundpoint may collect late fees.

2.      This is a breach of the mortgage note and violates both state and federal statutes. Before bringing this suit, Plaintiff Gary Ventling sent two letters to Roundpoint requesting that they investigate their errors, correct their flawed receipt recording process, and refund unearned late fees. Roundpoint failed to respond to the first letter and responded to the second letter with a refusal to investigate, standing by its flawed receipt process. To enforce Wyoming and federal consumer protection law and stop these abusive business practices, Mr. Ventling brings this action on his own behalf and on behalf of a class of borrowers with loans serviced by Roundpoint.

### Jurisdiction and Parties

3.      Plaintiff, Gary Ventling, is a resident of Cody, Wyoming.

4.      Defendant Roundpoint Mortgage Servicing LLC is a Delaware limited liability corporation with its corporate headquarters in Fort Mill, South Carolina. Roundpoint does business in Wyoming and is the loan servicer responsible for collecting Mr. Ventling's payments and the charges assessed against his account.

2

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Mr. Ventling brings claims arising under United States federal law. The Court has supplemental jurisdiction over Mr. Ventling's State claims pursuant to 28 U.S.C. § 1367 because they are so related to his federal claims that they form part of the same case or controversy.

6.      Additionally, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because this is a putative class action, at least one class member is a citizen of a state different from the Defendant, and over $5,000,000 is in controversy.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Wyoming. Mr. Ventling paid portions of the improper late fees in Wyoming, and the property securing the mortgage loan is located in Wyoming.

**Facts**

***Overview of Roundpoint and the Uniform Residential Mortgages It Services***

8.      Roundpoint is a loan servicer and sub-servicer that operates around the country. Roundpoint buys mortgage servicing rights or contracts with a primary servicer to sub-service mortgage servicing and exercises those mortgage servicing rights to collect mortgage payments, charge authorized fees, enforce the mortgage or deed of trust and Note, and initiate foreclosure on properties that secure the mortgage or deed of trust and Note. Roundpoint does not disclose the terms of its servicing agreements publicly.

9.      Roundpoint also enters into service agreements with lenders, primary servicers, note holders, and trustees pursuant to which Roundpoint provides servicing, sub-servicing, and agency activities for loan portfolios. In accordance with those agreements, Roundpoint is

3

compensated by the lenders, noteholders, and trustees to function as their agent and to exercise their rights and responsibilities pursuant to their approval.

10.     Roundpoint either takes assignment of the servicing obligations in borrowers' loan agreements and/or is in functional privity and near privity of contract with Mr. Ventling and Class members, tasked with performing many of the obligations assumed by the lenders to Mr. Ventling's and Class members' loan agreements.

11.     Indeed, the vast majority of the mortgage loans serviced or subserviced by Roundpoint are secured by mortgage or deed of trust agreements conforming to the model mortgage documents of Fannie Mae/Freddie Mac, the Federal Housing Administration ("FHA") and other governmental agencies (the "Uniform Mortgages").

12.     Many of the provisions or "uniform covenants" found in the Uniform Mortgages are the same or substantially similar, including restrictions regarding the charging of fees. The Uniform Mortgages prohibit the charging of fees that are in violation of the law.

***Roundpoint fails to credit Mr. Ventling's timely-made payments***

13.     On September 23, 2016, Mr. Ventling and his wife, Marianne Ventling, financed the purchase of their home through a mortgage loan with Pinnacle Bank – Wyoming secured by the property.

14.     Pinnacle Bank – Wyoming is certified as insured by the Federal Deposit Insurance Commission at FDIC Cert. # 2232.

15.     Mr. Ventling's mortgage loan is secured by a Note that, like all Uniform Mortgages, provides monthly payments be made on the first day of every month. For any such payment, there is a fifteen-day grace-period whereby payment received until the sixteenth day of the month is considered timely.

16.     Under  Mr. Ventling's Uniform Mortgage, late fees may only be assessed if a monthly payment is received after the sixteenth day of the month.

17.     Mortgage loan servicing of Mr. Ventling's loan was transferred to Roundpoint on or around April 1, 2023.

18.     Roundpoint, as a successor or assignee of Pinnacle Bank – Wyoming, is bound to follow the covenants and agreements in Mr. Ventling's Uniform Mortgage, including the Note and Deed of Trust.

19.     According to Mr. Ventling's Uniform Mortgage, payments are deemed received when they are received at a location designated by the lender or its assignee.

20.     Roundpoint designated the address for receiving payments from Plaintiff as PO Box 674150 Dallas, Texas 75267 (the "Dallas PO Box").

21.     The Dallas PO Box is listed both on Mr. Ventling's billing statements and on Roundpoint's website as the address to which borrowers are to send any mailed payments.

22.     Mr. Ventling makes mortgage payments by causing checks to be drawn and mailed from his bank to the Dallas PO Box, and his bank provides United States Postal Service ("USPS") tracking of delivery.

23.     After his monthly payment is delivered to Roundpoint, Mr. Ventling receives payment receipts from his bank, which includes the USPS tracking information for the mailed check.

24.     Mr. Ventling's checks are usually in the rounded amount of $2,810.00, so he often overpays his $2,805.12 required monthly payment by $4.88.

25.     While payments are due on the first day of each month, Roundpoint's grace period for borrowers to timely make their payments is until 5:00 p.m. on the sixteenth day of each month.

26.     A late fee may only be assessed to payments that Roundpoint receives after 5:00 p.m. on the sixteenth day of each month.

27.     Roundpoint's policies provide that it credits payments as received no later than the next business day following receipt of the payment at the Dallas PO Box.

28.     Roundpoint does not credit payments to borrowers' account on the date of receipt. Instead, Roundpoint delays crediting the payment, resulting in the assessment of late fees.

29.     Roundpoint charged Mr. Ventling late fees of $140.26 per month, even though his payment receipts and USPS tracking prove that Roundpoint received his payment before the end of the grace period and even though his payments are full payments, not partial payments.

30.     For instance, Mr. Ventling's USPS receipts reflect that Roundpoint received his June 2023 payment on June 13. Nevertheless, Roundpoint failed to credit this payment to his account until June 22. Roundpoint assessed a $140.26 late fee on June 20.

31.     This late fee was partially refunded as a one-time courtesy on July 25, 2023.

32.     Mr. Ventling's USPS receipts reflect that Roundpoint received his August 2023 payment on August 11. Nevertheless, Roundpoint failed to credit this payment to his account until August 21. Roundpoint assessed a $140.26 late fee on August 17.

33.     Mr. Ventling's USPS receipts further reflect that Roundpoint received his October 2023 payment on October 14. Nevertheless, Roundpoint failed to credit this payment to his account until October 27. Roundpoint assessed a $140.26 late fee on October 17.

34.     Roundpoint credited $4.88 of Mr. Ventling's mortgage payment to this fee on October 27, instead of applying it to his mortgage or accrued interest.

35. Mr. Ventling's USPS receipts further reflect that Roundpoint received his November 2023 payment on November 11. Nevertheless, Roundpoint failed to credit this payment to his account until November 22. Roundpoint assessed a $140.26 late fee on November 17.

36. Roundpoint credited $4.88 of Mr. Ventling's mortgage payment to this fee on November 22, instead of applying it to his mortgage or accrued interest.

37. Mr. Ventling's USPS receipts further reflect that Roundpoint received his December 2023 payment on December 8. Nevertheless, Roundpoint failed to credit this payment to his account until December 19. Roundpoint assessed a $140.26 late fee on December 18.

38. Roundpoint credited $4.88 of Mr. Ventling's mortgage payment to this fee on December 19, instead of applying it to his mortgage or accrued interest.

39. Mr. Ventling's records further reflect that Roundpoint received his January 2024 payment on January 9. Nevertheless, Roundpoint failed to credit this payment to his account until January 19. Roundpoint assessed a $140.26 late fee on January 17.

40. Roundpoint credited $4.88 of Mr. Ventling's mortgage payment to this fee on January 19, instead of applying it to his mortgage or accrued interest.

41. As of February 1, 2024, Roundpoint had assessed $411.02 in late fees to Mr. Ventling's account. Roundpoint credited $4.88 of Mr. Ventling's February 2024 mortgage payment to these late fees on February 20.

42. Roundpoint credited $4.88 of Mr. Ventling's March 2024 mortgage payment to these late fees on March 12.

43. Roundpoint credited $4.88 of Mr. Ventling's April 2024 mortgage payment to these late fees on April 15.

44.     The balance of the late fees Roundpoint assessed to Mr. Ventling's account as of May 7, 2024, was $396.38.

45.     As reflected by Mr. Ventling's and Roundpoint's payment history documents, Roundpoint has assessed improper late fees to Mr. Ventling's account.

46.     Upon information and belief, due to Roundpoint's policies and systems for processing and handling checks and assessing fees, Roundpoint improperly charges other borrowers late fees when their payments by mail are timely received.

***Mr. Ventling's QWRs under RESPA and Roundpoint's Late and Insufficient Responses***

47.     Mr. Ventling made multiple attempts to remedy these servicing errors with Roundpoint, including making multiple phone calls and sending multiple written notices of error.

48.     The Real Estate Settlement Procedures Act ("RESPA") outlines specific notice requirements for the servicing of mortgage loans and administration of escrow accounts. *See* 12 U.S.C. § 2605.

49.     Under RESPA, if a borrower sends the servicer a Qualified Written Request ("QWR"), the servicer must respond in accordance with the statute and accompanying regulations. A QWR is defined as "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." *Id.* § 2605(e)(1)(B).

50.     Under RESPA, servicers must acknowledge receipt of a QWR within 5 business days of receipt, and they must respond to a QWR within 30 business days of receipt. 12 C.F.R. § 1024.35(d), (e)(3)(i); *id.* § 1024.36(d)(2).

51.     RESPA's implementing regulations require servicers that receive a QWR containing a notice of error to "respond" by either (1) correcting the error(s) and providing a written notice of correction, the effective date of correction, and contact information for further assistance; or (2) conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined no error occurred, a statement of the reasons for this determination, information about how to request the underlying documents, and contact information for further assistance. 12 C.F.R. § 1024.35(e)(1).

52.     Servicers that receive a QWR requesting information about the servicing of a mortgage must "respond" by either (1) providing the requested information and contact information for further assistance, or (2) conducting a reasonable search for the information and providing the borrower with a written notification that the servicer has determined the information is not available, the basis for the determination, and contact information for further assistance. 12 C.F.R. § 1024.36(d)(1).

53.     Roundpoint does not have adequate procedures for handling, investigating, and curing errors identified in QWRs received by borrowers. When borrowers complain about Roundpoint's improper assessment of late fees on timely received payments, Roundpoint does not investigate or cure the problem, and does not respond within the time limits required under RESPA and its implementing regulations.

54.     On March 21, 2024, Mr. Ventling sent QWRs containing a notice of error and request for information pursuant to Section 2605(e) of RESPA and Sections 1024.35 and 1024.36 of Regulation X, which implements RESPA, to Defendant.

55.     The QWRs stated Mr. Ventling's name and account number, explained the servicing issue wherein Roundpoint failed to credit on-time mortgage payments as of the date of

receipt and incorrectly imposed late fees, and requested that Roundpoint remove the late fees and provide information concerning the loan to Mr. Ventling, including his loan servicing file.

56.    Roundpoint acknowledged receipt of Mr. Ventling's QWRs by letters dated March 28, April 2, and April 11.

57.    Mr. Ventling did not receive Roundpoint's letter dated April 2, 2024, until April 13, 2024.

58.    Mr. Ventling did not receive Roundpoint's letter dated April 11, 2024, until April 22, 2024.

59.    Roundpoint did not provide a response to Mr. Ventling's QWRs until he received a packet by certified mail on May 25, 2024.

60.    The packet was stamped by the USPS as having been mailed on May 21, 2024.

61.    Enclosed in the packet were Roundpoint's letter responses to Mr. Ventling's QWRs, dated May 7 and May 16, 2024.

62.    Roundpoint either delays mailing or backdates its correspondence to borrowers to make it appear that Roundpoint complied with federal law and regulations when it did not timely provide the correspondence required under RESPA.

63.    Roundpoint's May 7 and 16 letters, signed by its Assistant Vice President, state that upon review, Roundpoint found that it had made no errors in servicing Mr. Ventling's loan. Attached to the letter were the documents Roundpoint claimed that it relied upon in reaching its decision.

64.    Neither the letters nor the documents explained or identified the discrepancy in when Roundpoint actually received Plaintiff's payments versus when Roundpoint credited Mr. Ventling's payments.

65.   This documentation did not include a complete life-of-loan loan transaction history from the date of origination of this loan to the present date, showing all credits and debits to Mr. Ventling's mortgage loan account or a code sheet that would allow Mr. Ventling to understand what each transaction represented, even though he specifically requested this information.

66.   Roundpoint is liable for the acts of its employees, agents, representatives, co-conspirators and related entities under the theories of *respondeat superior*, agency, conspiracy, joint venture, joint enterprise, as parents-subsidiaries or under corporate veil-piercing, including, but not limited to, alter ego, instrumentality, identity, unity of interest, disregarding the corporate fiction and other such corporate veil-piercing theories. Accordingly, Roundpoint is equally, co-extensively, and jointly and severally liable for each and every act of its employees, agents, representatives, co-conspirators and related entities, including each and every act of every third-party that Roundpoint hired or retained.

67.   Roundpoint's conduct as set forth herein has caused borrowers, including Mr. Ventling, undue and unreasonable harassment, oppression, abuse, aggravation, annoyance, and inconvenience by having to bring suit due to the illegal conduct of the Defendant.

68.   Plaintiff and borrowers have suffered as a result of the stress caused by the harassment, oppression and abuse, aggravation, annoyance, and inconvenience caused by the Defendant.

### Class Allegations

69.   Mr. Ventling brings this action individually and on behalf of all others similarly situated.

70.   The nationwide class of consumers Mr. Ventling seeks to represented in this action is defined as:

**Nationwide Class: All persons (1) with a residential mortgage loan securing a property in the United States, (2) serviced or subserviced by Roundpoint, (3) with a mortgage or deed of trust agreement incorporating standard uniform covenants from Fannie Mae/Freddie Mac, FHA or similar government-backed model mortgages, and (4) who, within the applicable statute of limitations preceding the filing of this action through the date of class certification, had or have loans serviced by Roundpoint, mailed paper checks to Roundpoint, and were assessed late fees.**

71.    Mr. Ventling seeks to represent a nationwide class of consumers defined as:

**RESPA Class: All persons (1) with a residential mortgage loan securing a property in the United States, (2) serviced or subserviced by Roundpoint, and (3) who, within the applicable statute of limitations preceding the filing of this action through the date of class certification, submitted to Roundpoint a QWR containing a notice of error and/or a request for information.**

A Wyoming subclass of consumers Mr. Ventling seeks to represent in this action is defined

as:

**Wyoming Subclass: All persons (1) residing in a property in Wyoming secured by a residential mortgage loan, (2) serviced or subserviced by Roundpoint, (3) with a mortgage or deed of trust agreement incorporating standard uniform covenants from Fannie Mae/Freddie Mac, FHA or similar government-backed model mortgages, and (4) who, within the applicable statute of limitations preceding the filing of this action through the date of class certification, had or have loans serviced by Roundpoint, mailed paper checks to Roundpoint, and were assessed late fees.**

72.    Roundpoint has corporate policies and procedures regarding the collection of debts allegedly owed by consumers like Mr. Ventling. Roundpoint conducts its policies and procedures through the use of standardized collection activities.

73.    The class and subclass can be readily identified by collection activity logs, claim records and computer storage devices or databases, maintained by Roundpoint and/or its employees, representatives or agents.

74.   The class and subclass are so numerous that joinder of all class members is impracticable. The precise number of class members and their addresses are unknown to Mr. Ventling; however, they are readily available from Roundpoint's records. Class members may be notified of the pendency of this action by mail, supplemented (if deemed necessary or appropriate by the Court) by published notice.

75.   This action involves questions of law and fact common to the class and subclass which predominate over questions affecting individual class members.

76.   Mr. Ventling's claims are typical of the claims of the class and subclass because, among other things, Mr. Ventling, like the other members of the class and subclass, was subjected to the same conduct that gave rise to the illegal late fees assessed by Roundpoint.

77.   Mr. Ventling has displayed an interest in vindicating the rights of the class members, will fairly and adequately protect and represent the interest of the class and subclass, and is represented by skillful and knowledgeable counsel.

78.   Mr. Ventling's interests do not conflict with those of the class and the relief sought will inure to the benefit of the class generally.

79.   The questions of law and fact that are common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy between the class members and Roundpoint.

80.   The actions of Roundpoint are generally applicable to the class as a whole and to Mr. Ventling. For example, the class members can prove the elements of their claims against Roundpoint for violations of RESPA and the WCPA and their common law claims on a class-wide

basis using the same evidence that Mr. Ventling and individual class members would use to prove those claims in individual civil actions.

81.   Additionally, the damages or other financial detriment suffered by individual class members is relatively small compared to the burden and expense that would be required to individually litigate each of the class member's claims against Roundpoint and it would be impracticable for the class members to individually seek redress for the Roundpoint's wrongful conduct.

82.   Even if the members of the class or subclass could afford individual litigation, given the expected size of the class, separate litigation of each class member's claims against Roundpoint would create the potential for inconsistent and/or contradictory judgments, and cause delay and increase the expenses for the parties and the court in adjudicating the claims against Roundpoint. Conversely, a class action will prevent far fewer management difficulties, provide the benefits of a single adjudication, conserve time, effort and expense, employ comprehensive and cohesive supervision by a single court, and provide a forum for small claimants.

83.   The prosecution of separate actions by the individual members of the class or subclass would create a risk of inconsistent or varying adjudications with respect to individual class members which would establish incompatible standards of conduct for Roundpoint. Moreover, the likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

84.   Roundpoint has acted on grounds generally applicable to the class and subclass, thereby making appropriate final injunctive relief with respect to the members of the class or subclass as a whole.

85.     Any difficulties in management of this case as a class action are outweighed by the benefits that a class action has to offer with respect to disposing of common issues of law and fact on issues affecting a large number of litigants.

86.     The damages in this case are set by statute and generally preclude the necessity of a case-by-case assessment of damages by the court. To the extent case-by-case assessment is necessary, Roundpoint maintains computerized individual account information, and that information can easily be reviewed and assessed electronically. Mr. Ventling is unaware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership as described above.

87.     Mr. Ventling's claims are typical of those of the class and subclass as a whole, and Plaintiff is capable of and willing to represent the other members of the class and subclass.

## Claims

### Count I –Violation of the Real Estate Settlement Procedures Act
### Individually and On Behalf of the RESPA Class

88.     Mr. Ventling incorporates the preceding paragraphs by reference.

89.     RESPA's purpose is to achieve fair settlement procedures in acquisitions of property. *See* 12 U.S.C. § 2601(b) ("effect certain changes in the settlement process for residential real estate").

90.     As a remedial act, RESPA should be construed broadly to effectuate Congress's intent, and it is written broadly enough to cover post-settlement late charges. *See* 12 U.S.C. § 2602(1)(A) (including "loan ... which ... is serviced by a first lien ... on residential real property...."); 12 U.S.C. § 2605(e)(1)(A) (duty of loan servicers to respond to borrower inquiries within five days); 12 U.S.C. § 2605(i)(2) (servicer "means the person responsible for servicing of a loan"); 12 U.S.C. § 2605(i)(3) (servicing "means receiving any scheduled periodic payments").

15

91.     Loan servicers that fail to comply with RESPA are liable to the borrower for an amount equal to the sum of "(a) any actual damages to the borrower as a result of the failure; and (b) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." *See* 12 U.S.C. § 2605(f)(1)(a)–(b). A successful action entitles the borrower to "costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances." *Id.* at § 2605(f)(3).

92.     Roundpoint is a loan servicer subject to RESPA because it is responsible for servicing Mr. Ventling's and class members' loans. 12 U.S.C. § 2605(i)(2).

93.     Mr. Ventling has identified Roundpoint's pattern or practice of noncompliance with RESPA's requirements because Roundpoint failed to maintain systems sufficient to accurately track when borrowers' payments are received, failed to credit class members' timely-made payments, and improperly applied portions of class members' payments to its improperly assessed late fees. With respect to Mr. Ventling, Roundpoint improperly applied portions of payments for a period of at least nine months.

94.     Roundpoint does not maintain adequate internal controls to ensure that paper checks are recorded as received on the date paper checks are actually received by Roundpoint.

95.     Roundpoint further routinely fails to adequately respond to QWRs and conduct reasonable investigations of those QWRs.

96.     As set forth herein, Roundpoint failed to timely and adequately respond to Mr. Ventling's QWRs and did not conduct a reasonable investigation of the issues outlined in Mr. Ventling's QWRs.

97.    A loan servicer must acknowledge receipt of a request from a borrower within five days (excluding weekends and legal public holidays). 12 U.S.C. § 2605(e)(1); 12 C.F.R. § 1024.35(d). In the absence of several exceptions, the servicer must respond to the notice of error within 30 days by either: (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction; (B) following an investigation, explaining or clarifying why the account is correct; or (C) after an investigation, providing the borrower with a written explanation or clarification that includes information requested and explaining why information not provided cannot be obtained or provided by the servicer. 12 U.S.C. § 2605(e)(2); 12 C.F.R. § 1024.35(e)(1)(i).

98.    Roundpoint did not timely acknowledge receipt of Mr. Ventling's QWRs.

99.    Roundpoint did not timely respond to Mr. Ventling's QWRs.

100.    Roundpoint either delays mailing or backdates its correspondence to borrowers to make it appear that Roundpoint complied with federal law and regulations, when it did not timely provide the correspondence required under RESPA.

101.    Roundpoint does not routinely make corrections to class members accounts after receiving the QWRs and did not do so as to Mr. Ventling's account.

102.    Roundpoint made no discernable investigation or vetting of its systems to the detriment of the Class. When notified of the problems by Mr. Ventling, Roundpoint did not address or explain the discrepancy between when it demonstrably received Mr. Ventling's payments versus when it applied Mr. Ventling's payments.

103.    Rather, Roundpoint simply doubled down on its conduct and continues to rely on systems that are demonstrably creating a delay between when borrowers payments are received

versus when the payments are applied to borrowers' accounts and that result in unfair late fees being assessed against borrowers.

104.    Any investigation Roundpoint did complete was inadequate and unreasonable.

105.    Roundpoint did not provide information that Mr. Ventling requested in his QWR, including the complete life-of-loan loan transaction history from the date of origination of this loan to the present date, showing all credits and debits to his mortgage loan account or a code sheet that would allow him to understand what each transaction represented, even though he specifically requested this information. Roundpoint routinely does not provide this information to class members.

106.    Roundpoint did not explain why the information Mr. Ventling requested is unavailable or could not be obtained.

107.    Mr. Ventling and class members have suffered actual damages by Roundpoint's failure to adequately respond to his QWR and remedy the issues identified therein. Roundpoint continues to impose late fees when payments are timely received and  Roundpoint continues to improperly credit portions of  mortgage payments by Mr. Ventling and class members to unjustified late fees.

108.    If these portions of Mr. Ventling's and class members' mortgage payments were not credited to unjustified late fees, they would be instead credited to their loan balance or escrow fees, resulting in damages to Mr. Ventling and the class.

109.    Additionally, as a result of Roundpoint's conduct, Mr. Ventling was forced to retain counsel thereby incurring attorney fees and costs.

### Count II –Violation of the Wyoming Consumer Protection Act
### Individually and On Behalf of the Wyoming Subclass

110.    Plaintiff incorporates the preceding paragraphs #1 through #87 by reference.

111.    Roundpoint's actions further violated the Wyoming Consumer Protection Act (WCPA).

112.    Under the WCPA, an entity is prohibited from engaging in "a deceptive trade practice" in the course of its business, and the definition of that term includes a number of specifically identified acts. *See* Wyo. Stat. § 40-12-105(a). The WCPA includes a general prohibition on "unfair or deceptive acts or practices." § 40-12-105(a)(xv).

113.    Although the WCPA does not define these terms, a 'deceptive practice' has broadly been understood as one that is likely to mislead consumers, and an 'unfair practice' as one that offends established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *WyoLaw, LLC v. Off. of Att'y Gen., Consumer Prot. Unit*, 2021 WY 61, ¶ 28, 486 P.3d 964, 972 (Wyo. 2021) (quoting *Nicklas v. Pro. Assistance, LLC*, No. 18-CV-0066-SWS, 2018 WL 8619646, at *3 (D. Wyo. Sept. 26, 2018)).

114.    The WCPA defines "consumer transaction" as "the advertising, offering for sale, sale or distribution of any merchandise to an individual for purposes that are primarily personal, family or household[.]" Wyo. Stat. § 40-12-102(a)(ii). The term "merchandise" is broadly defined as "any service or any property, tangible or intangible, real, personal or mixed, or any other object, ware, good, commodity, or article of value wherever situated." Wyo. Stat. § 40-12-102(a)(vi).

115.    Payments by Mr. Ventling and the subclass members to Roundpoint constitute consumer transactions under the WCPA because the definition broadly encompasses services rendered for primarily household purposes, and Roundpoint services the subclass's residential mortgages.

116.    On behalf of the subclass, Mr. Ventling provided Roundpoint the statutorily required notice of its wrongful conduct under Wyo. Stat. § 40-12-109.

117.    Roundpoint's unfair and deceptive practice of failing to maintain systems sufficient to accurately track when borrowers' payments are received, failing to credit Mr. Ventling's timely-made payments, and applying portions of Mr. Ventling's payments to its improperly assessed late fees is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, including Plaintiff.

118.    Roundpoint's practices are further unfair and offensive to established public policy in that the Consumer Financial Protection Bureau's federal regulations clearly state that for loans secured by a consumer's principal dwelling, "[n]o servicer shall fail to credit a periodic payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer." 12 C.F.R. 1026.36(c)(1)(i). "The 'date of receipt' is the date that the payment instrument or other means of payment reaches the mortgage servicer. For example, payment by check is received when the mortgage servicer receives it, not when the funds are collected." 12 C.F.R. 1026.36(c)(1)(i) cmt. 3.

119.    Roundpoint has not cured these unlawful or deceptive trade practices even after being notified of them by Mr. Ventling.

120.    Roundpoint has and continues to willfully violate RESPA.

121.    Roundpoint has and continues to willfully violate the WCPA.

122.    Mr. Ventling and the subclass have been damaged by these unlawful or deceptive trade practices by paying unwarranted late fees.

### Count III –Breach of Contract
### Individually and On Behalf of the Nationwide Class

123.    Plaintiff incorporates the preceding paragraphs #1 through #87 by reference.

124.    Mr. Ventling's mortgage loan agreement with Pinnacle Bank – Wyoming that financed the purchase of his home is a contract and a Uniform Mortgage.

125.    Roundpoint, as a successor or assignee of class members' Uniform Mortgages, including Mr. Ventling's mortgage with Pinnacle Bank – Wyoming, is bound to follow the covenants and agreements in the Uniform Mortgages with Plaintiff and the class.

126.    According to Mr. Ventling's mortgage, payments are deemed received when they are received at the designated location.

127.    Roundpoint failed to acknowledge mortgage payments by Mr. Ventling and the class as received when they were received at the location Roundpoint designated.

128.    Roundpoint breached the agreements it had with Mr. Ventling and class members.

129.    Upon information and belief, the contracts Roundpoint services on behalf of Wyoming consumers are uniform.

130.    Mr. Ventling suffered damages as a result of Roundpoint's breach in the form of paying unearned and improper late fees in the amount of $140.26 per breach.

## Count IV – Conversion
### Individually and On Behalf of the Nationwide Class

131.    Mr. Ventling incorporates the preceding paragraphs #1 through #87 by reference.

132.    Conversion is defined as any distinct act by dominion wrongfully executed over one's property in denial of his right or inconsistent with it.

133.    Roundpoint wrongfully converted portions of Mr. Ventling's and the Class's mortgage payments to Roundpoint's own use by applying the amounts to improperly assessed late fees.

## Count V – Unjust Enrichment
### Individually and On Behalf of the Nationwide Class

134.    Mr. Ventling incorporates the preceding paragraphs #1 through #87 by reference.

21

135.    Unjust enrichment is defined the unjust retention of a benefit to the loss of another, where it would be inequitable if no compensation was paid in return.

136.    Mr. Ventling and class members paid improper and unjust late fees to Roundpoint.

137.    Mr. Ventling and class members made mortgage payments to Roundpoint, and Roundpoint applied portions of Mr. Ventling's and the class members' mortgage payments to improper and unjust late fees, to Roundpoint's benefit.

138.    Roundpoint was unjustly enriched by Mr. Ventling and class members' payments.

139.    Under the circumstances detailed herein, Roundpoint should not be permitted to unjustly enrich itself at Mr. Ventling's and the class members' expense.

## DEMAND FOR RELIEF

Plaintiff demands for himself and the proposed class from the Defendant:

A.    Actual and compensatory damages suffered as a result of Defendant's failure to timely credit payments by Plaintiff and class members;

B.    Actual and compensatory damages suffered as a result of Defendant's misapplication of class members' payments to pay improper late fees;

C.    Actual and compensatory damages for annoyance, aggravation, distress, bother and anxiety for the violations of RESPA as authorized by 12 U.S.C. § 2605(f)(1)(a)–(b) and violations of the WCPA as authorized under Wyo. Stat. § 40-12-108(b) for all such violations that occurred up to the date and time of the filing of this complaint;

D.    Statutory damages in the maximum amount authorized by 12 U.S.C. § 2605(f)(1) or (2) for all such violations that occurred up to the date and time of the filing of this complaint;

E.    Plaintiff's cost of litigation, including attorney fees, court costs and fees, pursuant to 12 U.S.C. § 2605(f)(3) and Wyo. Stat. § 40-12-108(b);

F.     Such other relief as the Court shall deem meet and proper under the attendant

circumstances.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Plaintiff, Gary Ventling,

By:

Kevin K. Kessner (WSB# 6-4257)
Yonkee & Toner, LLP
P.O. Box 6288
319 W. Dow St.
Sheridan, WY 82801-6288
Phone: (307) 674-7451
Fax: (307) 672-6250
Email: kkessner@yonkeetoner.com

James L. Kauffman (DC #1020720)
*PHV to be submitted*
Bailey & Glasser LLP
1055 Thomas Jefferson St. NW, Ste. 540
Washington, D.C. 20007
Telephone: (202) 463-2101
Fax: (202) 463-2103
Email: jkauffman@baileyglasser.com

Denali S. Hedrick (WV #14066)
*PHV to be submitted*
Bailey & Glasser, LLP
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Fax: (304) 342-1110
Email: dhedrick@baileyglasser.com

Kristen G. Simplicio (DC Bar No. 977556)
*PHV to be submitted*
Tycko & Zavareei LLP
1828 L Street NW, Ste. 1000
Washington, D.C. 20036

Phone: (202) 973-0900
Fax: (202) 973-0950
ksimplicio@tzlegal.com

*Counsel for Plaintiff*