IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

**FILED**

2:18 pm, 1/30/25

**Margaret Botkins**
**Clerk of Court**

GARY VENTLING, in his own right and
as representative of a class of persons
similarly situated,

    Plaintiff,

    VS.

ROUNDPOINT MORTGAGE
SERVICING LLC,

    Defendant.

Case No.  24-CV-158-SWS

---

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND STRIKE CLASS ALLEGATIONS

This matter comes before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7) and Strike Class Allegations pursuant to Federal Rule of Civil Procedure 12(f) and supporting memorandum. (ECF 17 & 18). Plaintiff Gary Ventling filed a response in opposition (ECF 33). Defendant RoundPoint Mortgage Servicing LLC ("RoundPoint") replied (ECF 34). For the reasons explained below, the Court finds the motions must be granted in part and denied in part.

## BACKGROUND

Ventling alleges that RoundPoint failed to timely credit his mortgage payments resulting in the assessment of late fees. Ventling raises five claims for relief against

RoundPoint regarding this assessment of late fees: (1) violation of the Real Estate Settlement Procedures Act ("RESPA"), (2) violation of the Wyoming Consumer Protection Act ("WCPA"), (3) breach of contract, (4) conversion, and (5) unjust enrichment. (ECF 1). Ventling brings the action individually and on behalf of three classes.

RoundPoint is the servicer of Ventling and his wife's mortgage loan for their home in Cody, Wyoming. (ECF 1). Ventling and his wife's mortgage contract[1] with RoundPoint requires "monthly payments be made on the first day of every month, but only assesses late fees "if a monthly payment is received after the sixteenth day of the month." (ECF 1; ECF 18, Ex. A). Ventling alleges that the mortgage contract is a Uniform Mortgage. (ECF 1). Ventling alleges that he makes mortgage payments by causing checks to be drawn and mailed from his bank to the P.O. Box designated by RoundPoint for receiving payments, which includes United States Postal Service ("USPS") tracking information. (ECF 1). Ventling's required monthly payment on the mortgage is $2,805.12, but he alleges he usually overpays to the amount of $2,810.00. (ECF 1).

Ventling alleges for the months of June, August, October, November, and December of 2023, and January of 2024, his USPS tracking information indicate RoundPoint received his payments between the 8th and 14th of each month. (ECF 1). Yet, Ventling alleges RoundPoint did not credit those payments to his account until after the 16th of the month

---

[1] RoundPoint attached five exhibits to its motion to dismiss: the mortgage contract, letters sent by Ventling to RoundPoint, and RoundPoint's response to Ventling's letters. The Court will consider these documents "referred to in the complaint" for the motion to dismiss as they are "central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Toone v. Wells Fargo Bank, N.A.,* 716 F.3d 516, 521 (10th Cir. 2013) (citing *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010)); *see also Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941-42 (10th 2002).

on each of those occasions, thus assessing a late fee of $140.26. (ECF 1.) RoundPoint then credited the amount he overpaid each month to the late fee rather than his mortgage principal or accrued interest. (ECF 1).

Ventling asserts that he made "multiple attempts to remedy these servicing errors with RoundPoint, including making multiple phone calls and sending multiple written notices of error." (ECF 1). On March 21, 2024, Ventling alleges he sent Qualified Written Requests ("QWR") to RoundPoint containing notices of error and requests for information. (ECF 1; ECF 18, Ex. B). Each of the QWRs stated "I believe your company failed to credit my on-time mortgage payments as of the date of receipt and incorrectly imposed late fees" and requested a copy of his complete loan servicing file. (ECF 18, Exs. B-D). Ventling alleges RoundPoint acknowledged receipt of his QWRs by letters dated March 28, April 2, and April 11, 2024, although he didn't receive the April letters until 11 days after those dates. (ECF 1). Ventling also asserts he received a packet from RoundPoint on May 25, 2024, which was postmarked on May 21, 2024, and contained two letters dated May 7 and May 16, 2024. (ECF 1, ECF 18, Ex. E). The May 7, 2024, letter from RoundPoint "enclosed a thorough review of [RoundPoint's] business records and enclosed the requested documents and information." (ECF 18, Ex. E). The letter concluded "there has been no error by RoundPoint in the servicing of the loan" because Ventling's payments were received after the expiration of the grace period. (ECF 18, Ex. E).

## LEGAL STANDARD

### 1. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows the court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Syts, Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). A motion to dismiss for failure to state a claim should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). To withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). While a complaint "does not need detailed factual allegations," pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly,* 550 U.S. at 555.

## DISCUSSION

RoundPoint moves for dismissal for several reasons. RoundPoint first requests dismissal of all claims because Ventling failed to comply with the "Notice of Grievance" provision in his mortgage contract and failed to plausibly allege he complied with WCPA's pre-suit notice requirement. Second, RoundPoint seeks dismissal of Ventling's RESPA

claim because: (1) RoundPoint conducted a reasonable investigation, (2) Ventling fails to allege actual damages stemming from RoundPoint's alleged untimely response, and (3) Ventling fails to make any factual allegations as to a pattern or practice of misconduct. Third, RoundPoint seeks dismissal of Ventling's conversion and unjust enrichment claims because they are precluded by the breach of contract claim and Wyoming's economic loss doctrine. Fourth, RoundPoint seeks dismissal of the complaint under Federal Rule of Civil Procedure 12(b)(7) because Ventling failed to join his wife, a co-borrower on the mortgage contract, as a party. Finally, RoundPoint requests the Court strike the class allegations because: (1) the classes include uninjured members and (2) individualized issues render certification of the classes impossible.

### 1. Pre-Suit Notice

RoundPoint first argues that all of Ventling's claims must be dismissed because Ventling does not plausibly allege, he gave proper notice to RoundPoint. Thus, RoundPoint argues Ventling (1) did not comply with the Notice of Grievance provision in the mortgage contract, and (2) did not comply with WCPA's pre-suit notice requirement. Ventling argues that he sufficiently alleges that he provided RoundPoint with pre-suit notice in compliance with the "Notice of Grievance" provision and the WCPA.

Both parties agree that Ventling's mortgage contract required written notice of any alleged breach and a reasonable period for the allegedly breaching party to take corrective action, prior to commencing any judicial action. However, RoundPoint argues Ventling's correspondence with RoundPoint lacked sufficient detail to put RoundPoint on notice,

whereas Ventling argues that the mortgage contract does not require any additional level of detail. The mortgage contract includes the following Notice of Grievance provision:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

(ECF 18, Ex. A).

Ventling alleges he sent "multiple notices of error," and those notices of error stated, "I believe your company failed to credit my on-time mortgage payments as of the date of receipt and incorrectly imposed late fees." (ECF 1; ECF 18, Ex. B-D). At this stage when the allegations are to be interpreted "in the light most favorable to the plaintiff" and as noted in Exhibits B through D, Ventling notified RoundPoint of an alleged breach to the mortgage contract and gave reasonable time for RoundPoint to take corrective action. *See Burnet,* 706 F.3d at 1235. Ventling notified Roundpoint as to his beliefs that RoundPoint was failing to credit his on-time mortgage payments and incorrectly imposing late fees (both breaches of the mortgage contract). While RoundPoint cites to several cases where courts found the plaintiff failed to comply with a notice-and-cure provision, all the cases cited involved a plaintiff who failed to provide or allege they provided any pre-suit notice. *See Milam v. Selene Fin., LP,* 2024 WL 3455027, at *5 (N.D. Ill. July 18, 2024); *DeBoskey v. SunTrust Mortg., Inc.,* 2017 WL 4083557, at *18 n.12 (M.D. Fla. Sept. 14, 2017*); Giotta v. Ocwen Loan Servicing, LLC*, 706 F. App'x 421, 422 (9th Cir. 2017); *Adkins v. Apple*

*Inc.*, 147 F. Supp. 3d 913, 921 (N.D. Cal. 2014); *Stovall v. SunTrust Mortg., Inc.*, 2011 WL 4402680, at *6-7 (D. Md. Sept. 20, 2011). Alternatively, in this case, Ventling does allege, albeit minimally, and the exhibits do reflect that Ventling provided pre-suit written notice to RoundPoint. At this stage, Ventling sufficiently alleged he gave RoundPoint pre-suit notice in accordance with the Notice of Grievance provision of the mortgage contract.

However, while the allegations might be sufficient at this stage to defeat dismissal in accordance with the Notice of Grievance provision, the allegations are not sufficient to satisfy the notice requirement of the WCPA. The WCPA allows a consumer to pursue a private remedy "relying upon an uncured unlawful deceptive trade practice" only when the consumer "has given notice to the alleged violator pursuant to W.S. § 40-12-109." Wyo. Stat. Ann. § 40-12-108; § 40-12-102. "The notice required … shall state fully the nature of the alleged unlawful deceptive trade practice and the actual damage suffered therefrom." § 40-12-109. This notice requirement is a prerequisite to pursuing a private remedy. *See Broderick v. Dairyland Ins. Co.*, 270 P.3d 684, 693 (Wyo. 2012).

Ventling claims RoundPoint committed the unfair and deceptive trade practice of "failing to maintain systems sufficient to accurately track when borrowers' payments are received" resulting in the failure to credit Ventling's timely-made payments and assessing Ventling late fees. Ventling also alleges that he "provided RoundPoint the statutorily required notice of its wrongful conduct," but the only notice alleged is the letters written to RoundPoint. The letters written to RoundPoint do not provide notice of the deceptive practice alleged in Ventling's Complaint as they make no mention of the insufficient systems of tracking borrowers' payments. As the WCPA specifically requires consumers

to "state fully the nature of the alleged unlawful deceptive trade practice" in their notice to an alleged violator, Ventling failed to provide notice as required before pursuing a private remedy under the WCPA. For this reason, Ventling's claim alleging a violation of the WCPA is dismissed.

## 2. RESPA Claim

Ventling's RESPA claim alleges that RoundPoint's investigation and response to his QWR were inadequate and untimely in violation of 12 U.S.C. § 2605(e). In its motion to dismiss, RoundPoint argues that Ventling does not state an actionable RESPA violation. RoundPoint contends the RESPA claim is not actionable because (1) it satisfied its obligations under RESPA, (2) Ventling does not allege any connection between the alleged untimely response and the damages alleged, and (3) Ventling does not and cannot allege a pattern or practice of noncompliance by RoundPoint. Ventling responds stating that he sufficiently pled facts supporting his RESPA claim, including damages and a pattern or practice of RESPA violations.

Under RESPA, if a loan servicer "receives a qualified written request from the borrower, … the servicer shall provide a written response acknowledging receipt of [a qualified written request (QWR)] within 5 days." 12 U.S.C. § 2605(e)(1)(A). Within 30 days of receipt of a qualified written request (QWR), the servicer must either:

> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction …

> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes … to the extent applicable, a statement

of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer … or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes … information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer….

12 U.S.C. § 2605(e)(2).

### a. Obligations under RESPA

Ventling alleges RoundPoint failed to conduct a reasonable investigation into the issues raised in Ventling's QWRs and failed to timely and adequately respond to Ventling's QWRs. Ventling sent QWRs on March 21, 2024. Ventling's QWRs all stated "I believe your company failed to credit my on-time mortgage payments as of the date of receipt and incorrectly imposed late fees. I am writing to request that you correct this error as well as provide information surrounding the assessment of such late fees on my loan," and asked for several documents, including a "complete life-of-loan transaction history." (ECF 18, Ex. B-D). Ventling alleges RoundPoint acknowledged receipt of his QWRs by letters dated March 28, April 2, and April 11. RoundPoint then sent a package to Ventling which contained letters dated May 7 and May 16, 2024, and which was allegedly postmarked as being sent on May 21, 2024. RoundPoint's letter stated a brief history of their communications and Ventling's payment history and late fee assessments, and then it concluded "[o]ur review indicates there has been no error by RoundPoint in the servicing of the loan and the debt is valid." (ECF 18, Ex. D). The package also included enclosures of payment history, fees and transactions and amount history, payoff statement dated May 7, 2024, and mortgage billing statement. (ECF 18, Ex. D).

Regarding the reasonableness of the investigation conducted by RoundPoint, RoundPoint conducted an investigation and provided a statement of reasons—namely RoundPoint's month-by-month description of Ventling's payment history, the date payment was received, and how the payment was distributed between principal and late fees—as to why it believed its assessment of late fees was correct. RoundPoint's package also included four of the five documents requested by Ventling in his QWRs, but RoundPoint did fail to include a "complete life-of-loan transaction history." Ventling asserts that this was not a reasonable investigation because it did not "explain[] or identif[y] the discrepancy in when RoundPoint actually received Plaintiff's payments versus when RoundPoint credited Mr. Ventling's payments." (ECF 1 at 10). However, Ventling's QWRs contained no mention of such a discrepancy and did not include the USPS tracking information which allegedly reveals this discrepancy. (ECF 18, Ex. B-D). While Ventling may believe the investigation produced inaccurate results, "RESPA does not require the servicer to provide information the borrower believes to be accurate." *Brunson v. Provident Funding Assocs.*, 608 F. App'x 602, 612 (10th Cir. 2015). RESPA "requires the servicer to provide 'a statement of the reasons *for which the servicer believes* the account of the borrower is correct *as determined by the servicer*' and the information requested by the borrower." *Id.* Thus, the only plausible alleged failure in RoundPoint's investigation is its failure to include a "complete life-of-loan transaction history" in its response. *See* § 2605(e)(2)(C) ("after conducting an investigation, provide the borrower with … information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained").

Regarding the timeliness of RoundPoint's response, Ventling alleges that RoundPoint did not timely acknowledge receipt of his QWRs and did not timely respond to his QWRs. Based on the allegations made and documents referred to in the complaint, (1) Ventling sent QWRs on March 21, 2024, (2) Ventling received a letter acknowledging RoundPoint's receipt of those letters starting on March 28, 2024, and (3) RoundPoint sent a response to the QWRs on May 21, 2024, which Ventling received on May 25, 2024. The complaint does not allege the date on which RoundPoint received the QWRs. However, accepting Ventling's well-pled factual allegations as true and viewing them in the light most favorable to the non-moving party, the Court finds that Ventling sufficiently alleged that Roundpoint "did not timely acknowledge receipt of" and "did not timely respond to" his QWRs. Therefore, Ventling stated a plausible claim of a RESPA violation regarding the untimeliness of RoundPoint's actions.

Ventling has stated plausible violations of RESPA by RoundPoint in failing to include a "complete life-of-loan transaction history" in its response and untimely acknowledging and responding to his QWRs. However, Ventling fails to allege actual damages stemming from RoundPoint's alleged noncompliance, and thus the alleged RESPA violations are not actionable.

### b. Damages

"[I]ndividuals are entitled to damages under § 2605(e) only for actual damages arising from a RESPA violation and for statutory damages arising from a pattern or practice of violations[.] … Therefore, to survive a Rule 12(b)(6) motion to dismiss a claim under § 2605(e) of RESPA, plaintiffs must plead actual damages stemming from the failure to

respond to requests or a pattern or practice of misconduct." *Toone v. Wells Fargo Bank, N.A.,* 716 F.3d 516, 523 (10th Cir. 2013).

Ventling alleges he has suffered "actual damages by RoundPoint's failure to adequately respond to his QWR and remedy the issues." (ECF 1). Ventling states that if the late fees were not assessed, then portions of the mortgage payments "would be instead credited to their loan balance or escrow fees." (ECF 1). Ventling also alleges that he has incurred attorney fees and costs. (ECF 1). The actual damages alleged are insufficient to support a private cause of action under RESPA for several reasons.

First, Ventling fails to adequately "plead a causal link between [the] claimed damages and the specific RESPA violation" committed by RoundPoint—here, failing to include a life-of-loan transaction history and untimeliness. *Henson v. Bank of America*, 935 F. Supp. 2d 1128, 1145 (D. Colo. 2013); *see Fowler v. Bank of America, Corp.*, 747 F. App'x 666, 670 (10th Cir. 2018). The damages alleged by Ventling are either mere conclusory allegations or are those which resulted from the imposition of late fees, notably not resulting from an inadequate or untimely response. Ventling argues that the Court can "infer" from the allegations that "if RoundPoint had properly investigated … [the] QWRs … then it would not continue to improperly assess" late fees. (ECF 33). However, this inference is not plausible considering the only plausible investigation failure by RoundPoint was a failure to include a "complete life-of-loan transaction history" in its response. Further, Ventling's attorney fees and costs "can't be actual damages because RESPA separately allows successful plaintiffs to recover such 'fees and expenses *in*

*addition* to actual damages.'" *Fowler*, 747 F. App'x at 670-71. Thus, Ventling fails to allege any actual damages that stem from RoundPoint's violations.

As for statutory damages, Ventling's complaint contains no facts suggesting a pattern of practice of misconduct by RoundPoint to support statutory damages under RESPA. Section 2605(f)(1)(B) authorizes additional damages "in the case of a pattern or practice of *noncompliance with the requirements of this section*." (emphasis added). The patterns or practices explicitly alleged by Ventling—"failed to maintain systems sufficient to accurately track … payments," "failed to credit … timely-made payments," and "improperly applied … payments to … late fees"—are all regarding the alleged improper assessment of late fees. (ECF 1). These are not patterns or practices of *noncompliance with the requirements of RESPA*, such as a pattern or practice of failing to include information requested in response to QWRs or untimely responses to QWRs. *See* § 2605(f)(1)(B).

Additionally, Ventling's allegations of routine noncompliance with RESPA by RoundPoint are limited to Ventling's own experiences or conclusory allegations of violations against "borrowers" generally.  RoundPoint's alleged failures to include a requested document and timely respond to three identical QWRs sent by Ventling, two of which were sent on the same day, is insufficient to be considered a pattern or practice of noncompliance. *See Ogden v. PNC Bank*, 2014 WL 4065617, at *10 (D. Colo. Aug. 15, 2014) (two RESPA violations are insufficient to support a pattern or practice) (*citing Roth v. CitiMortgage Inc.*, 2013 WL 5205775, at *8 (E.D.N.Y Sept. 11, 2013) (finding failure to respond to three letters, two of which were identical, did not establish a pattern or practice of noncompliance)).  Further, the Court cannot plausibly infer a pattern or practice

of noncompliance against borrowers generally when the complaint fails to plead any facts to support allegations of "violations with respect to other borrowers." *Fowler,* 747 F. App'x at 673.

Because Ventling has failed to adequately plead actual or statutory damages with respect to RoundPoint's alleged failure to include a "complete life-of-loan transaction history" in its response or untimely acknowledgement and response to QWRs, Ventling fails to state a RESPA claim. For this reason, Ventling's claim alleging a violation of RESPA is dismissed.

### 3. Conversion and Unjust Enrichment Claims

Ventling also asserts a claim for conversion and a claim for unjust enrichment against RoundPoint. Ventling's conversion claim asserts "RoundPoint wrongfully converted portions of Mr. Ventling's and the Class's mortgage payments to RoundPoint's own use by applying the amounts to improperly assessed late fees." (ECF 1 at 16). Ventling's unjust enrichment claim asserts RoundPoint was unjustly enriched by the portions of Ventling's and the class's mortgage payments that were applied to improperly assessed late fees. (ECF 1).

RoundPoint first argues the conversion claim fails because the funds were lawfully acquired and because Wyoming's economic loss doctrine necessitates dismissal. Roundpoint then argues both the conversion and unjust enrichment claims fail because they are precluded by the mortgage contract and breach of contract claim. Ventling counters that the breach of contract claim does not warrant dismissal because the claims can be treated as pled in the alternative.

### a. Conversion[2]

"Conversion occurs when a person treats another's property as his own, denying the true owner the benefits and rights of ownership." *Lieberman v. Mossbrook*, 208 P.3d 1296, 1304 (Wyo. 2009). "To establish a conversion claim, the plaintiff must prove: (1) he had legal title to the converted property; (2) he either had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff his rights to use and enjoy the property; (4) in those cases where defendants lawfully, or at least without fault, obtained possession of the property, the plaintiff made some demand for the property's return which the defendant refused; and (5) the plaintiff has suffered damage by the loss of the property." *Id.* Despite RoundPoint's arguments that Ventling's conversion claim fails because it lawfully acquired the funds, Ventling's conversion claim satisfies the necessary elements of a conversion claim—particularly the fourth element which supports conversion claims even if the property was originally lawfully obtained. However, Ventling's conversion claim fails due to Wyoming's economic loss rule.

Wyoming's economic loss rule "bars recovery in tort when a plaintiff claims purely economic damages unaccompanied by physical injury to persons or property." *Rogers v. Wright*, 366 P.3d 1264, 1275 (Wyo. 2016) (quoting *Rissler & McMurry Co. v. Sheridan Area Water Supply Joint Powers Bd.*, 929 P.2d 1228, 1234-35 (Wyo. 1996)). The rule bars parties from "sidestep[ping] contractual limitations by simply pleading an intentional tort."

---

[2] Wyoming state substantive law applies to Plaintiff's state law claims for violation of Wyoming's Consumer Protection Act, breach of contract, conversion and unjust enrichment. *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1216-17 (10th Cir. 2011).

*Excel Constr., Inc. v. HKM Engineering, Inc.*, 228 P.3d 40, 48 (Wyo. 2010) (citing *Rissler*, 929 P.2d at 1235). However, the application of the economic loss rule to "torts such as fraud and conversion [which] exist to remedy purely economic loss" has been difficult. *Excel Constr.*, 228 P.3d at 47. The Wyoming Supreme Court has recognized "that the economic loss rule does not apply to all tort claims alleging only economic damages; 'tort liability may still be premised on a duty independent of contractual duties.'" *Skyco Res., LLP v. Family Tree Corp.*, 512 P.3d 11, 27 (Wyo. 2022) (quoting *Rogers*, 366 P.3d at 1275). Thus, "[d]etermining whether a particular intentional tort claim is simply a repacked contract claim requires consideration of the conduct alleged, its relationship to the contractual duties of the parties, the source of the tort duty alleged to have been breached, and the nature of the damages claimed." *Excel Constr.*, 228 P.3d at 48 (citations omitted).

Here, Ventling's conversion claim is not based on a duty independent of contractual duties. The alleged wrongful conversion of portions of the mortgage payments to RoundPoint's own use in applying the portions to late fees are related to duties outlined in the contract—time and place of payment, application of payments, late charges for overdue payments. (ECF 18, Ex. A). Ventling is generally alleging that RoundPoint breached its duty to credit timely made payments to the principal and, rather, is applying portions of those payments to wrongful late fees. This duty is created by the contract. Further, the damages alleged for the conversion claim are the same as the breach of contract claim. Ventling's conversion claim is the exact type of "sidestepping contractual limitations" that the economic loss rule is intended to address. *Excel Constr., Inc.*, 228 P.3d at 48. Thus, the economic loss rule bars Ventling's claim for conversion.

16

### b. Unjust Enrichment

"In Wyoming, the elements of unjust enrichment are: 1) valuable services were rendered; 2) to the party to be charged; 3) which services were accepted, used, and enjoyed by the charged party; and 4) under circumstances that reasonably notified the party being charged that the other party would expect payment for the services. *Schlinger v. McGhee*, 268 P.3d 264, 272 (Wyo. 2012). "Unjust enrichment is an equitable remedy. As such, it cannot exist where there is an express contract governing the relationship between the parties." *Id.*; *see McAuliffe v. Vail Corp.*, 69 F.4th 1130, 1153 (10th Cir. 2023). There is no dispute that the mortgage contract governed the relationship between the parties. Thus, whether RoundPoint was unjustly enriched by applying portions of mortgage payments to late fees is a contract dispute—as evidenced by the same conduct being alleged as a breach of contract. "When a complaint alleges … the same facts for both a breach of unambiguous express contract and unjust enrichment, and the defendant does not dispute the existence of the express contract," there is no factual issue, and the Court can and should dismiss the unjust enrichment claim. *Flat Footed LLC v. Begley*, 2020 WL 10357004, at *4 (D. Wyo. Oct. 27, 2020).

Ventling argues that if the Court agrees that the claims are better suited as breach of contract claims, then it is proper to treat these claims as pled in the alternative rather than to dismiss. The Court disagrees. Regarding the unjust enrichment claim, like in *Flat Footed,* RoundPoint does not dispute the existence of the express contract, and the same facts are alleged in the claims, so it is not premature for the Court to rule on the question on Rule 12 motion. 2020 WL 10357004, at *4; *cf. Christian v. Loyakk, Inc.* 650 F.Supp.3d

1242, 1270 (D. Wyo. 2023) (finding dismissal of unjust enrichment claim premature when movant disputes the express contract). *See also McAuliffe*, 69 F.4[th] at 1153-54 (substantively similar to Wyoming law, under Colorado law plaintiff could not state claims for unjust enrichment or money had and received where express contract exists addressing the subject of the alleged obligation to pay). Considering the conversion claim is barred by the economic loss doctrine as it is rooted in contractual duties and Ventling asserts a contract claim, the Court also need not allow Ventling to plead conversion in the alternative. Thus, as a matter of law, Plaintiff's Complaint fails to state a plausible claims for conversion and unjust enrichment.[3]

### 4. Necessary Party

RoundPoint also argues that Ventling's claims must be dismissed under Federal Rule of Civil Procedure 12(b)(7) because Ventling's wife ("Mrs. Ventling"), a co-borrower on the mortgage contract, is not named as a plaintiff. RoundPoint alleges that Mrs. Ventling is a necessary party because her absence could prejudice her interests and could subject RoundPoint to multiple or inconsistent liabilities for the same conduct. Ventling responds that his wife is not a necessary party, but, even if she were, amendment rather than dismissal is the appropriate remedy.

Rule 12(b)(7) allows the Court to dismiss an action based on a "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Federal Rule of Civil Procedure 10 "provides a three-step process for determining whether an action should be dismissed for failure to join

---

[3] Ventling's conversion and unjust enrichment claims are dismissed without prejudice. In the event RoundPoint later disputes the applicability or enforceability of the contract, Ventling will be allowed to amend his complaint and/or the principle of judicial estoppel will apply.

Case 1:24-cv-00158-SWS   Document 35   Filed 01/30/25   Page 19 of 24

a purportedly indispensable party." *Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir. 2001), *opinion modified on reh'g*, 257 F.3d 1158 (10th Cir. 2001). "First, the court must determine whether the absent person is 'necessary.'" *Id.* A person is necessary under Rule 19 if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or
>
> (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a); *Id.*

Second, '[i]f the absent person is necessary, the court must then determine whether joinder is 'feasible.'" *Citizen Potawatomi Nation*, 248 F.3d at 997. Finally, if joinder is not feasible for a necessary party, the court must decide "whether 'in equity and good conscience' the action can continue in [their] absence." *Id.* The "proponent of a motion to dismiss under 12(b)(7) has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." *Citizen Band of Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994).

First, Mrs. Ventling, as co-borrower on the mortgage contract, has an interest in the subject of the action. Mrs. Ventling would be bound by the outcome of this litigation, and thus her ability to protect her interest in the proper execution of the mortgage contract may be impaired by the disposition of the action. However, the issue of whether or not an absent

party's interest will be impaired "may be minimized if the absent party is adequately represented in the suit." *Rishell v. Jane Phillips Episcopal Mem'l Med. Crt.,* 94 F.3d 1407, 1411 (10th Cir. 1996). Therefore, the question becomes whether Mr. Ventling adequately represents Mrs. Ventling in the suit such that any prejudice to her interest is minimized. The Court has no reason to believe, as a spouse and as co-borrower, Ventling would not adequately represent Mrs. Ventling's interests, and RoundPoint has not provided any reason why he would not. Thus, while Mrs. Ventling, as co-borrower, has an interest in the action, her interests will still be protected because Mr. Ventling adequately represents them.

The Court must also consider whether RoundPoint would be subject to a substantial risk of multiple obligations by reason of Mrs. Ventling's interest in the action. Because Mrs. Ventling is in privity with Ventling as to any damage claims arising out of the alleged breach of the mortgage contract, she would be bound by the outcome of this litigation. *See Worman v. Carver,* 44 P.3d 82, 88-90 (Wyo. 2002) (spouse was separate and distinct for individual liability for civil tax penalties but not for alleged damages and claims for injuries alleged to arise from identical wrongful conduct alleged by other spouse). Thus, RoundPoint does not run the risk of being subject to multiple obligations. Accordingly, Mrs. Ventling is not a necessary party that must be joined in the action.

### 5. Request to Strike Class Allegations

Ventling brought this action individually and on behalf of three potential classes: a Nationwide Class, a RESPA class, and a Wyoming subclass. RoundPoint requests that Ventling's class allegations be stricken because the classes include uninjured members,

and individualized issues render certification impossible. Ventling contends that RoundPoint's request is premature at this stage and inadequate as any potential individualized issues can be resolved.

Federal Rule of Civil Procedure 12(f) allows the court to strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading." Alternatively, Federal Rule of Civil Procedure 23(d)(1)(D) allows the court to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Whether under Rule 12(f) or 23(d)(1)(D), in a pre-discovery motion to strike class allegations, a defendant must "demonstrate from the face of the complaint 'that it will be impossible to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove.'" *Ziegler v. Dale*, 2018 WL 8131670, at *3 (D. Wyo. Dec. 7, 2018) (citing *Francis v. Mead Johnson & Co.,* 2010 WL 3733023 (D. Colo. Sep. 16, 2010)). "Striking class allegations prior to class certification consideration requires 'a high standard of proof.'" *Id.* (citing *Wornicki v. Brokerpriceopinion.com, Inc.*, 2015 WL 1403814, at *4 (D. Colo. Mar. 23, 2015)).

The only claim that remains at this point is the breach of contract claim brought individually and on behalf of the Nationwide Class. "A prerequisite for certification is that the class representative be a part of the class and possess the same interest and suffer the same injury as class members." *Rector v. City and Cnty. of Denver*, 348 F.3d 935, 949 (10th Cir. 2003). Therefore, as to the RESPA Class and Wyoming Subclass, dismissal of Ventling's individual RESPA and WCPA claims precludes Ventling's representation of a class of persons similarly situated. *See* Fed. R. Civ. P. 23(a)(3). For the reasons set forth

above, a RESPA Class and Wyoming Subclass alleged by Ventling are impossible to certify and no amount of discovery or amendment will change that reality. Therefore, striking those class allegations as to the RESPA Class and Wyoming Subclass is proper. *See Faulhaber v. Petzl America, Inc.*, 656 F.Supp.3d 1257, 1271-72 (D. Colo. 2023) (court may grant motion to strike class allegations where pleading makes clear that the purported class cannot be certified and no amount of discovery would change that determination). However, at this point, the same cannot be said for the Nationwide Class.

RoundPoint argues the Nationwide Class must also be stricken because it includes members who have not been injured and has individualized issues which will predominate over common questions, such as pre-suit notice, the terms of each members' contracts, and timeliness of payments. The proposed Nationwide Class includes:

> All persons (1) with a residential mortgage loan securing a property in the United States, (2) serviced or subserviced by Roundpoint, (3) with a mortgage or deed of trust agreement incorporating standard uniform covenants from Fannie Mac/Freddie Mac, FHA or similar government-backed model mortgages, and ( 4) who, within the applicable statute of limitations preceding the filing of this action through the date of class certification, had or have loans serviced by Roundpoint, mailed paper checks to Roundpoint, and were assessed late fees.

(ECF 1).

The Nationwide Class is defined such that it could include members who were properly assessed late fees (and thus not injured), but the bar for striking class allegations at this stage is higher than the possibility that the class could not be certified. RoundPoint needs to demonstrate that it would be "impossible to certify the classes alleged." *Ziegler*, 2018 WL 8131670, at *3. It could be the case, however unlikely, that all members who were assessed late fees were assessed late fees improperly and thus were injured.

22

RoundPoint continues by raising several individualized issues for the class that would potentially prevent certification. First, RoundPoint argues the Notice of Grievance provision in each borrower's mortgage contract requires notice to RoundPoint before bringing suit which prevents certification of the class. However, the Notice of Grievance provision requires notice before being "joined to any judicial action," and no members of the class have yet to be joined. (ECF 18, Ex. A). RoundPoint has not met its very high burden at this stage to show that it will be impossible for members of the class to give some form of notice that would not override the commonality of the class. Second, RoundPoint argues unique terms of each borrower's mortgage contract could predominate the common questions. At this stage, a finding that the terms of the mortgage contracts would render certification impossible is premature, particularly given that RoundPoint has argued the uniform Notice of Grievance provision is applicable to all borrowers. Finally, RoundPoint argues that determining the timeliness of each member's payment will overwhelm any issues that may be common. Again, this argument is insufficient at this stage to support striking the class allegation. "[I]n most circumstances, it is appropriate for courts to allow discovery before determining whether class certification is appropriate," and the Court agrees that would be appropriate in the case of this Nationwide Class. *Wornicki*, 2015 WL 1403814, at *4.

## CONCLUSION AND ORDER

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Count I (RESPA claim), brought in Gary Ventling's individual capacity and on behalf of the RESPA class, is dismissed.

**IT IS FURTHER ORDERED** that Count II (WCPA claims), brought in Gary Ventling's individual capacity and on behalf of the Wyoming Subclass, is dismissed.

**IT IS FURTHER ORDERED** that Counts IV (Conversion) and V (Unjust Enrichment), brought in Gary Ventling's individual capacity and on behalf of the Nationwide Class, are dismissed.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Class Allegations is granted in part and denied in part. The RESPA Class and Wyoming Subclass allegations are stricken.

**IT IS FINALLY ORDERED** that Defendant's Motion to Dismiss and to Strike Class Allegations is **DENIED** as to Count III (breach of contract), brought in Gary Ventling's individual capacity and on behalf of the Nationwide Class, against RoundPoint.

Dated this <u>30th</u> day of January, 2025.

Scott W. Skavdahl
United States District Judge